**Mary STONE, Appellant,**

v.

**ARTHUR HEWITT DESIGNS, INC. et al.,**
**Appellees.**

Court of Appeals of Kentucky.

June 15, 1962.

W. C. Edrington, Louisville, for appellant.

Boehl, Stopher, Graves & Deindoerfer, James M. Graves, William B. Swain, Louisville, John B. Breckinridge, Atty. Gen., Frankfort, Ben K. Wilmot, Department of Industrial Relations, Frankfort, for appellees.

STEWART, Chief Justice.

This is an appeal from a judgment of the Jefferson Circuit Court which set aside an award of compensation to appellant, Mary Stone, and remanded the proceeding to the Workmen's Compensation Board with instructions to apportion the disability between an old leg injury suffered by appellant some twenty years ago and an injury of August 13, 1959, for which she claims compensation.

On August 13, 1959, appellant, aged 37 and a "forelady" at Arthur Hewitt Designs, Inc., in Louisville, while descending a flight of stairs at her place of employment, slipped, fell backwards, and hit the small of her back and the rear portion of her head on the edge of a step. She did not leave her work but that night entered

St. Anthony's Hospital in Louisville where she remained for ten days. She was examined and treated by Dr. Fred Coy, Jr., an orthopedic surgeon, and continued under his care until December 4, 1959, at which time he thought she was able to return to her job. Dr. Coy fitted her with a back brace which she still wears. She has not returned to her employment. On December 11, 1959, she filed her application for compensation.

Dr. Coy, testifying for appellee employer, stated she first complained only of pain in her lower back; that X-rays and a physical examination revealed tenderness and muscle spasm in that region but disclosed no fracture or other bony abnormalities; and that his diagnosis was she had "an acute low back strain." She made nine calls at his office before he dismissed her on December 4, 1959. On April 20, 1960, appellant was re-examined by Dr. Coy. She complained on that occasion of a radiating pain down the back of her left thigh, which she said had existed for six weeks, but he testified he could find no physical cause for the pain.

Appellant sustained an injury in an automobile accident some twenty years before her fall on August 13, 1959, which resulted in crippling her left leg so that it is one inch shorter than the other one. Dr. Coy stated this difference "predisposes to having back pain." He found appellant has a 10% permanent disability to the low back due to the fall.

Three medical specialists in Louisville gave their depositions in behalf of appellee, based upon their examination of appellant. Dr. W. McDaniel Ewing, an orthopedic surgeon, described her condition as a strain of the lumbar musculature, said he found no indication of any permanent impairment from the injury, and believed five or six weeks of physical therapy would restore her to such health that she could resume her employment.

Dr. George F. Dwyer, Sr., a general surgeon, examined appellant twice. His finding was a severe lumbar muscle sprain with a tortion sprain to the lumbar spinal ligaments, causing neuritis in her spinal nerves. His view also was that the shortness of the left leg would cause a strain on the low back muscles.

Dr. Gordon Smiley, a neurosurgeon who examined appellant on February 25, 1960, testified he thought appellant suffered "a very significant injury" to the lumbar spine and "that her problem of pain and persistent muscle spasm over this rather prolonged period of time most probably indicates that there is underlying intervertebral disc injury with involvement of lumbar nerve roots."

The case was submitted on this evidence. The referee recommended an allowance to appellant of 25% permanent partial disability, which he believed grew out of the injury. The full Board, on review, ruled there was no medical proof to be found in the record on which to base apportionment and, under the authority of KRS 342.121, appointed Dr. K. Armand Fischer to examine appellant and testify what proportion of her disability was due to her former injury and what was attributable to her work-connected injury.

Dr. Fischer's diagnosis is set forth in his letter dated December 23, 1960, and we quote therefrom in part: "* * * It is my opinion that this patient may have sustained a back sprain, but at the present time, she seems to have an anxiety reaction and evidence of a psychoneurosis. It is my opinion that she should be placed in the hands of a psychiatrist with recommendations for future care and action by the Board. * * * Certainly, if she had a back sprain on August 13, 1959, she should be ready for some type of work at the present time. But with her mental reaction to this situation, she is not fit for any type of work." He did not apportion the disability, but he concluded his communication with this statement: "* * * the patient is totally disabled at the present time because of *her mental*

*reaction to this accident."* (Emphasis added.)

On February 21, 1961, the Board ordered appellant examined by Dr. Wilbur Mitchell, a psychiatrist, to determine the apportionment, if any existed, of her disability. On March 17, 1961, he reported appellant was suffering from a "psychoneurotic conversion reaction, which is an emotional illness rather than an injury." He stated that the neurosis was "apparently a by-product of her accident" but he would not assign a disability rating. He summed up her condition thus: "At the present time she is totally incapacitated by her emotional illness, and incapable of functioning."

On May 2, 1961, the full Board's order and award contained the following statements: "This case has been before the Board for this long period. Some final decision must be given. It is incumbent upon us to do so." The Board then found appellant suffered from temporary total disability and left the question of permanent disability undecided, giving appellant maximum benefits for 425 weeks on an "open-end" or "running" award.

Appellant argues that the courts may not interfere with the award because there is competent evidence of probative value to uphold the Board's findings. That evidence has been detailed above. Appellee maintains the evidence relating to physical disability is entirely inadequate to sustain the holding of the Board.

Appellant also asserts there can be no apportionment of any disability between the old accident and the fall, since the disability is now a neurosis which directly issued from the fall. She contends the evidence of Drs. Fischer and Mitchell establishes beyond peradventure that she is suffering from a traumatic neurosis caused solely by the accident of August 13, 1959. Appellee's position is that the evidence fails to sufficiently link appellant's alleged neurosis with the accident of August 13, 1959.

KRS 342.005(1) provides that, to be compensable, a disease must be the direct and natural result of a traumatic accident. In Eastern Coal Corp. v. Thacker, Ky., 290 S.W.2d 468, this Court said that "a neurotic condition which directly and naturally results from a trauma is compensable." See also High Splint Coal Company v. Jones, Ky., 338 S.W.2d 208.

We have no difficulty in concluding the Board's finding that appellant was 100% disabled is supported by an abundance of competent evidence of probative value. Dr. Fischer characterized her as being wholly incapacitated. Dr. Mitchell reached a similar conclusion. Dr. Dwyer, a surgeon who testified in behalf of appellant, after pointing out that appellant had to wear a back brace and had been told she could do only light work, summed up his diagnosis of her condition by stating: "I don't think she is going to get a whole lot better."

However, it is vigorously insisted the evidence failed to connect appellant's alleged neurosis with the accident on the employer's premises. Furthermore, it is contended that any disability which does exist should of necessity be apportioned between that attributable to the accident of August 13, 1959, and that attributable to the pre-existing leg injury.

The Board-appointed doctors reported they could not say how much disability, if any, appellant may have received from her prior injury. The other doctors did not testify as to any pre-existing disability. As mentioned heretofore, appellant was involved in an accident many years ago which left her left leg one inch shorter. There is not a single word of testimony in the record of this case that such an impairment had since bothered her. Neither is there any evidence, nor is it argued, that this pre-existing condition was in any wise "lighted up" or "aggravated" by the fall.

So, if the members of the medical profession could not or did not ascribe any percentage of impairment to the old leg

injury, certainly the Board could not do so. As there was no medical evidence assessing any of appellant's disability to the old leg injury, we must uphold the Board's finding that all of her disability was attributable to the accident on her employer's premises. This is because it appears to us from the proof that when the medical specialists were talking of appellant's present impairment they were speaking of the impairment which flowed only from her recent injury.

Wherefore, the judgment is reversed with directions that a new one be entered confirming the award of the Board.